DANIEL A. GLEASON, treasurer, *vs.* CITY OF BOSTON.

Suffolk.   Jan. 14. — Feb. 24, 1887.   HOLMES & GARDNER, JJ., absent.

Neither at common law, nor under the Pub. Sts. *c.* 84, § 6, is a married woman, whose husband is living, under legal obligation to support their children, even if the husband is imprisoned for crime; and her right to acquire a settlement, under the Pub. Sts. *c.* 83, § 1, *cl.* 6, 7, by a residence of five years, is not taken away, under § 2, by her receiving money, during the five years, to be used for the board of her pauper child.

CONTRACT, by the treasurer of the Commonwealth, for money expended, from July 1, 1882, to December 1, 1884, in the relief of Daniel Harrington, a minor, who was alleged to have a settlement derived from his mother in the defendant city. Trial in the Superior Court, without a jury, before *Barker*, J., who

found for the defendant; and reported the case for the determination of this court. If the finding was correct in law, judgment was to be entered thereon for the defendant; if incorrect, judgment was to be entered for the plaintiff. The facts appear in the opinion.

*J. Fox*, for the plaintiff.

*R. W. Nason*, for the defendant.

DEVENS, J. It is to be considered whether Mary A. Harrington, the mother of Daniel Harrington, for whom support has been furnished by the Commonwealth, had herself acquired a settlement in the city of Boston. She was a married woman, having no settlement of her own, and none derived from her husband elsewhere in the Commonwealth. She acquired one by residence in the defendant city for five years consecutively from February 14, 1877, to February 14, 1882, unless it shall be held that she received relief as a pauper during this period, by reason that, on her application, the sum of three dollars was given to her on February 11, 1882, by the overseers of the poor of Boston, to be used for the board of her child, who was then boarded out, she being then unemployed and unable to pay its board. Pub. Sts. *c.* 83, § 1, *cl.* 6, 7, and § 2. *Taunton* v. *Middleborough*, 12 Met. 35.

The husband of Mrs. Harrington was living in the Commonwealth, and on February 14, 1877, and on February 11, 1882, was serving terms of imprisonment in the house of correction. Whether, in the interval between these terms, if there was any, he resided with his wife, does not appear by the report or agreed facts, but it is found that during the whole period he contributed nothing to the support of his family, and was without means, owing to his intemperate habits.

If, under the circumstances, Mrs. Harrington was not under a legal obligation to support her child, then no relief was furnished her, and, although a married woman, she acquired a settlement in the defendant city by her residence of five years therein.

By the common law, as it exists in Massachusetts, the father is bound to support his minor children, and this even if he deserts them. *Dennis* v. *Clark*, 2 Cush. 347. Where the wife leaves the husband, having proper cause to do so, taking her

infant child with her, she carries with her his credit so as to make him responsible for the board and necessary expenses of both. *Reynolds* v. *Sweetser*, 15 Gray, 78. *Brow* v. *Brightman*, 136 Mass. 187. The legal obligation which the father is under to support the minor child is usually assigned as the reason why he is entitled to recover its wages when it has profitable employment. Upon the death of the father, if the mother is then bound to support the children, it is because she then is entitled to their wages and the custody of them. *Nightingale* v. *Withington*, 15 Mass. 272, 274. *Dedham* v. *Natick*, 16 Mass. 135. *Clapp* v. *Green*, 10 Met. 439.

As the personal property of the wife passed to the husband upon her marriage, at common law, she was necessarily deprived of this means of supporting her children, and all legal duties growing out of the marriage were imposed upon him. Even where the wife possesses separate property, it has been held, independently of statutory obligation, that she is not compelled to support the children of the marriage. Thus, it is said by Lord Cottenham, in *Hodgens* v. *Hodgens*, 4 Cl. & Fin. 322, 374, " The children may want even the necessaries of life; they may want the means of proper education; the law does not throw on the mother the duty, the legal obligation (the moral obligation we have nothing to do with here) of maintaining, educating, or providing for the children."

The Pub. Sts. *c.* 84, § 6, are relied on as establishing that the mother, equally with the father, is under a legal obligation to support their children. This section enacts that the kindred of poor persons " in the line or degree of father or grandfather, mother or grandmother, children or grandchildren, by consanguinity, living in this State and of sufficient ability, shall be bound to support such paupers, in proportion to their respective ability." It was founded on the St. of 1793, *c.* 59, § 3, which itself was based upon the St. of 43 Eliz. *c.* 2, § 7. This statute was in 1651 construed as not applying to femes covert. *Custodes* v. *Jinkes*, Style, 283. Apart from the principle that the adjudged construction of the terms of a statute must be deemed to be enacted as well as the terms themselves, when an act which has been passed by the Legislature of one State or country is afterwards adopted by another, *Commonwealth* v. *Hartnett*,

3 Gray, 450, 451, such appears to us its true construction. As remarked by Manisty, J., in *Coleman* v. *Overseers of Birmingham*, 6 Q. B. D. 615, where *Custodes* v. *Jinkes* is affirmed, the words mother and grandmother " must be read as if the description were ' mother and grandmother not being under coverture.' " It may be that, considering the larger liberties and rights now given to married women, their responsibilities and legal duties should be enlarged also. This is a matter for legislation. If the statute is properly construed in view of the circumstances which existed when it was passed, such judicial construction should still prevail.

Nor, if we assume that the husband entirely abandoned the wife during the five years' residence, which is the aspect of the case most favorable to the defendant, was the legal duty of supporting the child imposed upon the wife. That still remained upon the husband, and he could not extricate himself from it by abandoning his family, or so conducting himself that his means of performing it were necessarily curtailed during his lawful imprisonment. Those who furnished support to his children had a lawful claim against him for the expenses. It was not intended that the father and mother should be jointly responsible ; she becomes so only when he has ceased to be so. While the mother has greater rights over the child when she and it have been abandoned by the father, and while he will not be allowed to interfere with any reasonable contract made by her for the nurture or the employment of the child, this is upon the ground that he has authorized such contracts by his relinquishment of control over it, and not because he is no longer liable for its support. *Wodell* v. *Coggeshall*, 2 Met. 89. *Dumain* v. *Gwynne*, 10 Allen, 270. No facts here exist such as are found in *Brow* v. *Brightman, ubi supra*, where, the care and custody of the child having been given to the mother by a decree of this court, it was held that the father was not liable for its support. No contract could be implied against the husband, as he had ceased to have any control over the child, or any right to make any provision for it, except with the mother's consent. The only remedy to obtain such provision for the child as the father might be able to furnish would be under the decree. In the case at bar, the

husband had the full right to resume his control over the child, unless some order of court had intervened, and to make provision for it in his own way, and it was his duty to do so in a proper manner. This duty, incumbent on him, was not devolved on his wife by his crime or neglect. She was not under a legal obligation to support the child, and the assistance afforded her in doing so was not relief extended to her as a pauper.

The wife having acquired a settlement in Boston, and the husband having none in the Commonwealth, the child follows and takes the settlement thus acquired by its mother. Pub. Sts. *c.* 83, § 1, *cl.* 2. The plaintiff is therefore entitled to recover.

*Judgment for the plaintiff.*