TREASURER AND RECEIVER GENERAL *vs.* CHARLES SERMINI.

Suffolk.  November 12, 1917. — January 11, 1918.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Pauper.  Parent and Child.  Husband and Wife.  Insane Person.  Commonwealth.  Venue.*

Under R. L. c. 81, § 10, and St. 1909, c. 504, § 82, the Treasurer and Receiver General may recover in an action against a father, living in this Commonwealth and of sufficient ability, for the support in a State hospital for the insane of his daughter, who at the time of her committal was more than twenty-one years of age and was married to a man then living in this Commonwealth and continuing to reside here.

In such an action the erroneous admission, subject to the defendant's exception, of evidence, offered and introduced by the plaintiff, that the husband of the insane person was not of sufficient ability to pay for her support, does not harm the defendant, as he would have been none the less liable if it had appeared that the husband of his daughter was of sufficient ability to support her.

It also was *said* that, although the Treasurer and Receiver General was not bound to resort to his remedy against the husband if of sufficient ability to support his wife, he was at liberty to do so.

In the case above described, where the action, being a civil action in which money due to the Commonwealth was sought to be recovered, properly was brought under R. L. c. 167, § 4, in the county of Suffolk, although the defendant neither

lived nor had his usual place of business in that county, it was *said* that, if there had been an error in the venue, the defendant could not have taken advantage of it, because he did not raise the objection either by a plea or answer in abatement or by a motion to dismiss.

CONTRACT under St. 1909, c. 504, § 82, by the Treasurer and Receiver General, at the request of the State board of insanity, to recover for the support of the defendant's daughter Lena Morin at the price of $2.50 a week at the Northampton State Hospital for the insane. Writ dated March 31, 1915.

In the Superior Court the case was heard by *O'Connell*, J., without a jury. The essential facts found by him are stated in the opinion.

The plaintiff offered evidence to prove that Eugene W. Morin, the husband of Lena Morin, had no property at the date of the writ or at the time of the trial and was not then of sufficient ability to pay for the support of his wife and that there was no reasonable prospect of Morin accumulating property which could be levied upon to satisfy any judgment which might be obtained against him for such support. The defendant objected to the admission of this evidence. The judge stated that he would admit the evidence *de bene*, and, if he finally decided that the evidence was competent, its admission should be subject to the defendant's exception. The evidence was admitted and the judge made findings based on it, including findings that Eugene W. Morin had no property and that there was no reasonable prospect of his accumulating property which could be levied upon to satisfy any judgment that might be obtained against him for the support of his wife in the hospital.

At the close of the evidence the defendant asked the judge to make the following rulings:

"1. Upon all the facts and the law, the plaintiff is not entitled to recover and the verdict must be for the defendant.

"2. Under St. 1909, c. 504, § 82, the Treasurer and Receiver General cannot recover for the support of an insane person who is an adult married woman from any of the kindred of such person while her husband is living in the Commonwealth.

"3. A father is not 'bound by law' to support his adult daughter except she be a pauper and then only under the provisions of the statutes in such case provided."

The judge refused to make either of these rulings and ruled

that the defendant was liable. He found for the plaintiff in the sum of $404.23; and the defendant alleged exceptions.

R. L. c. 81, §§ 9, 10, are as follows:

"Section 9. A pauper, his executor or administrator shall be liable in an action of contract to a city or town in which he has a settlement for expenses incurred by it for his support.

"Section 10. The kindred of such poor persons, in the line or degree of father or grandfather, mother or grandmother, children or grandchildren, by consanguinity, living in this Commonwealth, and of sufficient ability, shall be bound to support such poor persons in proportion to their respective ability. The mother shall be under the same legal obligation to support her pauper children as the father, but she shall not be liable to criminal prosecution for the enforcement of such obligation."

St. 1909, c. 504, § 82, is as follows: "The price for the support of inmates, other than State charges, of the institutions mentioned in section fourteen, and of the Massachusetts School for the Feeble-Minded, shall be determined by the trustees of the respective institutions. The price for the support of State charges shall be determined by the State board of insanity at a sum not exceeding five dollars per week for each person, and may be recovered by the Treasurer and Receiver General from such persons if of sufficient ability, or from any person or kindred bound by law to maintain them. The Attorney General shall upon request of the said board bring action therefor in the name of the Treasurer and Receiver General."

*H. C. Joyner,* for the defendant.

*H. C. Attwill,* Attorney General, & *H. W. Barnum,* Assistant Attorney General, for the plaintiff, submitted a brief.

CROSBY, J. This is an action at law brought by the plaintiff in his official capacity under St. 1909, c. 504, § 82, to recover for the Commonwealth certain charges for the support of one Lena Morin, while she was an inmate of one of the State hospitals for the insane. A judge of the Superior Court has found certain facts, admitted by both parties at the trial, which are sufficient to establish liability, if, as matter of law, the defendant can be charged for the support so furnished.

The inmate died in the hospital on December 24, 1914. She was a daughter of the defendant, and on the date of her committal

was more than twenty-one years old and was legally married to one Eugene W. Morin, who was living in this Commonwealth at the time of her committal and has ever since resided here. It is agreed that the defendant is of sufficient ability to pay for the support furnished at the rate charged, and that due demand was made upon him therefor before the bringing of this action. It is his contention that he is not liable for the support of his adult married daughter either at common law or by virtue of any statute.

Whatever the rule of the common law in England may be, it is settled in this Commonwealth that, in the absence of any statute, a father if of sufficient ability is bound to support his minor children. *Dennis* v. *Clark,* 2 Cush. 347, 352. *Gleason* v. *Boston,* 144 Mass. 25, 26. It is also true that at common law no obligation rested upon a father to support his adult married daughter or adult son; but nearly a century and a quarter ago a statute was enacted in this Commonwealth which greatly enlarged and extended the common law liability for the support of poor and indigent persons. This statute, enacted in 1793, by c. 59, § 3, provided, in part, that the kindred of any poor person "in the line or degree of father or grandfather, mother or grandmother, children or grandchildren, by consanguinity, living within this Commonwealth, of sufficient ability, shall be holden to support such pauper in proportion to such ability." This statute in all material respects has remained unchanged and is now to be found in R. L. c. 81, § 10. *Gleason* v. *Boston,* 144 Mass. 25. Under Gen. Sts. c. 70, § 4, of which R. L. c. 81, §10, is a substantial reenactment, a father was held liable for the support of his adult pauper daughter, if of sufficient ability to contribute to such support. *Templeton* v. *Stratton,* 128 Mass. 137.

In the course of time, as the number of the insane and of persons otherwise deficient increased and it became necessary that they should be cared for in institutions established and maintained by the Commonwealth, statutes were enacted under which the Commonwealth was allowed to recover from cities and towns for the support so furnished, with a right on the part of such cities and towns to recover the amount so paid from the "kindred obligated by law to maintain" such persons, if of sufficient ability. Gen. Sts. c. 73, §§ 24, 25. By St. 1862, c. 223, § 11, the wording of the statute was changed with reference to the Commonwealth to its

present phrase, "any person or kindred." Pub. Sts. c. 87, § 32. R. L. c. 87, § 78. Under R. L. c. 87, § 79, cities and towns were released from the support of the poor insane and that expense was assumed by the Commonwealth, after January 1, 1904.

The question then is, who are the persons or kindred "bound by law to maintain" insane persons so supported? We cannot doubt that they are the relatives specified in R. L. c. 81, § 10. *Brookfield* v. *Allen*, 6 Allen, 585, was an action brought against a husband to recover for the support of his wife in a State insane asylum. When she was committed her residence was in Spencer; that town by Gen. Sts. c. 73, § 23, was obliged to pay, and did pay, for her support in the asylum; as her settlement was in Brookfield, that town by § 25 of the same chapter, was obliged to reimburse the town of Spencer, and having done so sought indemnity from the defendant. It was held that, while the action could not be maintained under Gen. Sts. c. 73, § 25 (which makes the insane person's "kindred obligated by law to maintain him, shall be liable for all such expenses paid by any city or town") because the word "kindred" includes only blood relatives, yet the defendant was liable at common law for the support of his wife. It was also held that "the 'kindred obligated by law' are manifestly those only who, by Gen. Sts. c. 70, § 4, are made chargeable for the support of poor persons, namely, the 'kindred in the line or degree of father or grandfather, mother or grandmother, children or grandchildren, by consanguinity.'" Accordingly it would seem that the defendant in the case at bar comes within the literal terms of the statute, as it is plain that the phrase "kindred obligated by law to maintain" in Gen. Sts. c. 73, § 25, refers to the same persons as "any person or kindred bound by law to maintain" found in St. 1909, c. 504, § 82. If so, the kindred bound by law to maintain are those persons specified in R. L. c. 81, § 10.

The fact that the insane person was married and that her husband was lawfully bound to support her cannot exempt the defendant from liability. There is no provision under R. L. c. 81, § 10, which excepts a father from liability for the support of his daughter as a pauper if she is of full age or is married, nor can such an exception be read into the statute, which was intended greatly to enlarge and extend the common law liability of relatives of paupers for their support. As the plaintiff argues, it is not prob-

able that the Legislature intended the liability of parents should terminate on the marriage of their children when they are made liable for the support of the grandchildren, the offspring of such marriage.   In *Fairhaven* v. *Howland,* 216 Mass. 149, which was an action to recover against a grandparent for the support of his grandchild as a pauper, under R. L. c. 81, §§ 10, 11, this court said at page 151, "If the child's parents had been living, and the need had arisen, the defendant would still have been liable."

The contention of the defendant that the plaintiff cannot maintain an action at law but is limited to a suit in equity under R. L. c. 81, § 11, cannot be sustained, as the remedy under which the plaintiff seeks to recover is not under R. L. c. 81, § 11, but is under St. 1909, c. 504, § 82.   *Arlington* v. *Lyons,* 131 Mass. 328, 330, 331.

The evidence, admitted subject to the defendant's exception, tending to show that the husband of the insane person was not of sufficient ability to pay for the support of his wife, becomes immaterial in view of the conclusion which we have reached; the defendant was not harmed by the evidence as he would have been liable in this case even if it had appeared that the husband was of sufficient ability to support his wife.   The plaintiff was not bound to seek his remedy against the husband, although he was at liberty to do so.   *Fairhaven* v. *Howland, supra.*

The defendant also argues that the action was improperly brought in Suffolk County and should have been brought in the county of Berkshire where the defendant lives.   Ordinarily, a defendant can take advantage of a wrong venue only by plea or answer in abatement, or by motion to dismiss if the error appears on the record, and the question is raised before a trial is had on the merits.   *Murphy* v. *Merrill,* 12 Cush. 284.   *Brown* v. *Webber,* 6 Cush. 560, 563.   However, failure on the part of the defendant to plead in abatement or move to dismiss did not harm him, as R. L. c. 167, § 4, provides: "A civil action in which the Commonwealth is plaintiff or in which money due to the Commonwealth is sought to be recovered may be brought in the county in which the defendant lives or has his usual place of business, or in the county of Suffolk."

As the defendant's requests for rulings could not properly have been granted, the entry must be

*Exceptions overruled.*