TREASURER AND RECEIVER GENERAL *vs.* CITY OF BOSTON.

Suffolk. March 1, 1926. — May 24, 1926.

Present: CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Settlement. Husband and Wife. Pauper.*

An adult woman in 1915 married a man who had a settlement in Boston and lived with him in Chelsea until his death, nearly four years later. He was admitted to the Cambridge Tuberculosis Hospital three days before his death; and more than five years after her marriage, she was admitted to a State sanatorium where she remained for about a year. In an action under G. L. c. 111, § 66, by the Treasurer and Receiver General against the city of Boston to recover charges for her support at the State institution, it was *held*, that

(1) By St. 1911, c. 669, § 1, cl. 2, upon her marriage the woman acquired a settlement in Boston;

(2) The time during which she lived with her husband in Chelsea was not to be counted toward the five consecutive years, absence during which would cause her to lose her settlement in Boston under St. 1911, c. 669, § 4;

(3) As a matter of law, the woman had not lost her settlement in Boston under said § 4 when she was admitted to the State institution;

(4) A finding for the plaintiff was warranted.

An adult woman in 1915 married a man with a settlement in Boston and four years and ten months later was admitted to a State sanatorium. Less than two months later her husband had been absent from Boston for five consecutive years but had not acquired a settlement elsewhere in the Commonwealth. The woman remained nine months at the institution. In an action under G. L. c. 111, § 66, by the Treasurer and Receiver General against the city of Boston to recover charges for the woman's support at the State institution, it was *held,* that

(1) Neither the years of the husband's absence from Boston nor the time during which the woman was in the State sanatorium were to be counted toward making the five consecutive years, absence during which would cause her to lose her settlement in Boston;

(2) A finding for the plaintiff was warranted.

Under St. 1911, c. 669, § 1, cl. 3, the settlement of a minor child on the death of his father followed that of his mother, and if, at the time he became of age, his mother's settlement was in Boston, the settlement he thus derived was not lost under St. 1911, c. 669, § 4, by less than five years' absence from Boston following his becoming of age and preceding entry by him into a State sanatorium, although beginning at the time he became of age he might himself have acquired settlement under § 1, cl. 1, of the statute by five consecutive years of absence; and therefore an action for the charges of his support in the institution could be maintained against the city of Boston under G. L. c. 111, § 66.

If the father of a child never had had a settlement in this Commonwealth and his mother, when he was ten years old, died with a settlement in Boston and he had been absent from Boston from the time when he was fifteen years of age until he was admitted to a State sanatorium at twenty-four years of age, under the provisions of R. L. c. 80, § 1, cl. 2; St. 1911, c. 669, § 1, cl. 3; § 4, his settlement was that of his mother at the time of his admission to the sanatorium, he not being able to acquire a settlement during minority and not having been away from Boston for five consecutive years after becoming of age; and therefore under G. L. c. 111, § 66, an action could be maintained against the city of Boston for the charges of his support.

A minor cannot lose a settlement derived from a parent by voluntary absence from the place of that settlement for five consecutive years during his minority.

CONTRACT to recover charges for the support of certain inmates of State institutions. Writ dated December 29, 1921.

In the Superior Court, the action was heard by *Brown*, J., without a jury, upon an agreed statement of facts. Material facts are stated in the opinion. On count eighteen, the judge found for the defendant; on count nineteen, for the plaintiff in the sum of $185.42; on count twenty, for the plaintiff in the sum of $55.96; on count twenty-one, for the plaintiff in the sum of $300; and on count twenty-three, for the plaintiff in the sum of $579.

The judge reported the action to this court for determination.

Material portions of St. 1911, c. 669, §§ 1, 4, were as follows:

"Section 1. Legal settlements may be acquired in any city or town in the following manner and not otherwise: . . .

"Second, A married woman shall follow and have the settlement of her husband if he has any within the Commonwealth; otherwise, she shall retain her own at the time of marriage if she then had any.

"Third, Legitimate children shall follow and have the settlement of their father if he has any within the Commonwealth; otherwise, they shall follow and have the settlement of their mother if she has any; if the father dies during the minority of his children they shall thereafter follow and have the settlement of their mother; in the event of the divorce of the parents the minor children shall follow and have the settlement of the parent to whom the court awards the custody of said minor children. . . .

"Section 4. A person who, after the passage of this act, is absent for five consecutive years from the city or town in which he had a settlement shall thereby lose his settlement. But the time during which a person shall have been an inmate of any public hospital, public sanatorium, almshouse, jail, prison, or other public institution, within the Commonwealth, or of a soldiers' or sailors' home whether within or without the Commonwealth, shall not be counted in computing the time either for acquiring or for losing a settlement, except as provided in section two."

The case was submitted on a brief by

*J. R. Benton*, Attorney General, & *J. E. Warner*, Assistant Attorney General, for the plaintiff.

No argument nor brief for the defendant.

CROSBY, J.    This is an action of contract to recover charges for the support of certain inmates of State institutions upon the ground that, as such inmates each had a legal settlement in Boston, that city, under the provisions of G. L. c. 111, § 66, is liable to the plaintiff as State Treasurer for the amount of such charges.    The declaration contained twenty-three counts, each relating to a claim against the defendant for the support of an inmate.    The case is before this court on a reservation and report made by a judge of the Superior Court upon an agreed statement of facts.    The questions of law to be determined relate to the eighteenth, nineteenth, twentieth, twenty-first and twenty-third counts.

Count eighteen.    This count alleges that the defendant is indebted for the support of Lillian M. Needham in the Lakeville State Sanatorium from December 7, 1920, to November 7, 1921, at the rate of $4 a week, she having a legal settlement in Boston.    It appears from the agreed facts that she was born in Chelsea, January 14, 1893; that she married Cyrus H. Needham, June 27, 1915, at Revere, and lived with him in Chelsea from that date until the date of his death on April 4, 1919; that he was twenty-five years old when he died, and had a settlement in Boston derived from his parents, who had a settlement there when he was twenty-one years of age; that he was continuously absent from Boston from and including June 27, 1915, to the date of his death; that he died at the Cambridge Tuberculosis Hospital where he was admitted April 1, 1919; and that his wife was admitted to the sanatorium on December 7, 1920, and remained there until November 7, 1921.    St. 1907, c. 474, § 10, which with slight changes is now embodied in G. L. c. 111, § 66, provides in part that the charges for the support of each inmate in the State sanatorium shall be $4 a week; that such charges for those not having known settlements in the Commonwealth shall be paid by it; that for those having known settlements in the Commonwealth the charges shall be paid either by the persons bound to pay them, or by the place in which such inmates had their settle-

ment unless security is given for their support. The question is: Did Lillian M. Needham have a settlement in Boston when the charges for her support were incurred? The determination of this question depends upon the proper interpretation of St. 1911, c. 669, now embodied with certain minor changes in G. L. c. 116, § 5, as amended by St. 1922, c. 479. On the date of her marriage, her husband had a legal settlement in Boston. Under the provisions of St. 1911, c. 669, § 1, cl. 2, by her marriage her settlement followed that of her husband. *Somerville* v. *Boston,* 120 Mass. 574, 575. *Treasurer & Receiver General* v. *Boston,* 229 Mass. 83, 86. Her settlement in Boston so acquired was not lost under the provisions of St. 1911, c. 669, § 4 (G. L. c. 116, § 5), as she was not absent from the place of settlement for five consecutive years within the meaning of that statute. If her husband by absence from Boston had lost his settlement, which does not appear, it would not affect her settlement acquired by her marriage. *Treasurer & Receiver General* v. *Boston, supra.* Although she lived with her husband from June 27, 1915, until the date of his death on April 4, 1919, and entered the sanatorium on December 7, 1920, if she was absent from Boston for a period of five years she did not lose her settlement, as the time during which she lived with her husband is not to be counted to defeat the settlement derived from him. *Brookfield* v. *Holden,* 247 Mass. 577. It follows that the finding for the defendant on this count must be reversed.

Count nineteen. Juliette Haley was an inmate of the North Reading State Sanatorium from November 10, 1919, to August 11, 1920. She was born in Cambridge July 8, 1889, and married John J. Haley, January 10, 1915. At that time he had a settlement in Boston. On January 1, 1920, he had been absent from Boston for five consecutive years, but did not acquire a settlement elsewhere in this Commonwealth. When his wife was admitted to the sanatorium she had a derivative settlement from him in Boston. If it be assumed that his settlement was lost by absence from Boston for five consecutive years, her settlement was not thereby lost. *Treasurer & Receiver General* v. *Boston, supra.*

If during her husband's absence from Boston she lived with him, such time could not be counted to defeat her settlement. *Brookfield* v. *Holden, supra.* Nor is the time she was an inmate of the sanatorium to be counted in computing the time either for acquiring or for losing a settlement "except as provided in section two." St. 1911, c. 669, § 4. G. L. c. 116, § 5. If she lived apart from her husband from the date of her marriage until she entered the sanatorium on November 10, 1919, she would not have been absent from Boston five consecutive years. *Needham* v. *Fitchburg,* 237 Mass. 354.

Count twenty. Ethel M. Johnson was an inmate of the North Reading State Sanatorium from January 21, 1921, to April 14, 1921. She was born in Boston, May 15, 1896. Her parents lived in Boston until November 11, 1915, when they moved to Everett in this Commonwealth; her father died there January 21, 1916. On May 15, 1917, when she became of age, the settlement of her mother was in Boston. Less than five years after becoming of age but more than five years from the time her father moved from Boston to Everett she was admitted to the sanatorium. She was not twenty-one years old when her father moved to Everett. While he was living she had a derivative settlement from him if he had any within the Commonwealth, otherwise her settlement followed that of her mother. As her father died during her minority, her settlement followed that of her mother which was in Boston. R. L. c. 80, § 1, cl. 2. St. 1911, c. 669, § 1, cl. 3. *Dedham* v. *Natick,* 16 Mass. 135. *Gleason* v. *Boston,* 144 Mass. 25. *Horgan* v. *Pacific Mills,* 158 Mass. 402. *Lamar* v. *Micou,* 112 U. S. 452, 470. During her minority she was incapable of acquiring a settlement of her own. After she became of age she might acquire a settlement in her own right. St. 1911, c. 669, § 1, cl. 1. However, as the time from May 15, 1917, (when she became of age) to January 21, 1921, (when she entered the sanatorium) was less than five years, she did not acquire a settlement by residence anywhere; consequently on the last named date she retained the settlement derived from her mother.

Count twenty-one. Mary E. McDonald was born in Boston August 2, 1894. Her father never acquired a settlement in this Commonwealth. Her mother died April 19, 1904, having a settlement in Boston. Mary left Boston in 1909 and never returned; she was admitted to the North Reading State Sanatorium December 13, 1918, which was less than five years after becoming of age on August 2, 1915. R. L. c. 80, § 1, cl. 2, provided as follows: "Legitimate children shall follow and have the settlement of their father if he has any within the Commonwealth; otherwise, they shall follow and have the settlement of their mother if she has any." St. 1911, c. 669, § 1, cl. 3. G. L. c. 116, § 1, cl. 3. Upon the facts stated it appears that Mary had a derivative settlement in Boston from her mother. She could not acquire a settlement elsewhere during her minority. After she became twenty-one years of age she was absent from Boston until December 13, 1918, when she was admitted to the sanatorium; on that date she had not lost her derivative settlement in Boston because she had not been absent from Boston for five consecutive years within the meaning of St. 1911, c. 669, § 4, as the time before August 2, 1915, when she became of age, is not to be counted as a part of such period of five years. It is not to be assumed in the absence of language to that effect that it was the intention of the Legislature that a minor child who had derived a settlement from her mother would lose it by absence during a period of time while she was still a minor. Such absence from the place of settlement cannot be considered as a voluntary act on her part, and therefore is not to be counted against her to defeat the settlement derived from her mother. *Treasurer & Receiver General* v. *Boston, supra. Brookfield* v. *Holden, supra.* The settlement of Mary E. McDonald, moreover, was not lost by reason of St. 1922, c. 479, as her settlement was in Boston when she entered the sanatorium.

Count twenty-three. Charles W. Witter was born in Charlestown, December 6, 1895. He was admitted to the North Reading State Sanatorium on October 24, 1919, and remained there until March 1, 1922. His father had a settlement in Boston. His mother died in Everett in this Com-

monwealth without having lost her settlement in Boston. This son has been absent from Boston since 1909. The question is, whether he had a settlement in Boston when he entered the sanatorium. He followed and had the settlement of his father under the provisions of R. L. c. 80, § 1, cl. 2. He could not lose this derivative settlement by voluntary absence before he became of age on December 6, 1916. As he was admitted to the sanatorium October 24, 1919, he had not been absent five years after reaching the age of twenty-one years. Accordingly his settlement in Boston was not lost.

Judgment should be entered for the plaintiff in the sum of $191.42 due on count 18, and for the several amounts found by the court to be due on the remaining counts.

*So ordered.*